IN THE SUPREME COURT OF THE STATE OF DELAWARE

QUINTON WHITE, §
§ No. 429, 2015
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 1407002011
STATE OF DELAWARE, §
§
Plaintiff Below, §
Appellee. §

Submitted: April 20, 2016
Decided: April 25, 2016

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 25th day of April, 2016, it appears to the Court that:

(1)    Quinton White and several accomplices, all overnight stockers at a Walmart store, plotted to steal televisions from the store. They transferred televisions into large, empty boxes that had contained cheaper items. They then paid for the boxes as if purchasing the cheaper items, and walked out of the store with the stolen televisions. Although the shuffling of the contents of the boxes happened in one of the few places in the store not under twenty four hour video camera surveillance, security cameras filmed the conspirators moving televisions and large boxes into that area, emerging with the large boxes, and then buying the large boxes. The State played footage of these activities for the jury, and various

witnesses testified to create a complete picture of the crime. The jury convicted White of theft of property worth more than $1,500. White has appealed his conviction, claiming the State offered insufficient evidence to convict him of the crime. Because the evidence presented at trial was sufficient for a rational jury to have found each element of the crime beyond a reasonable doubt, we affirm.

(2) White and his accomplices were overnight stockers at the Centerville Road Walmart in Wilmington, Delaware. They were responsible for moving newly arrived merchandise onto the sales floor and stocking the shelves. At the relevant times, White was primarily responsible for stocking the grocery department. Other than at Christmastime (when the store hired additional workers to meet the demand), no overnight stockers were supposed to stock the electronics department.

(3) The store had 240 surveillance cameras that ran twenty four hours a day, covering most of the store. Although no one actively monitored all of the cameras, the recordings were kept on a DVR where store personnel could examine them when necessary. One section of the store, the "site-to-store" bins, was not covered by any cameras. The "site-to-store" bins were where Walmart stored merchandise ordered on the internet for in-store pickup. The "site-to-store" bins were near the claims area, where Walmart kept damaged or returned merchandise before being sent back to the factory.

2

(4)     The criminal scheme took advantage of the gap in the store's security created by the lack of video surveillance in the "site-to-store" bins. The conspirators, in the middle of the night when there were few other employees around, moved boxed thirty two inch Vizio televisions and large but relatively cheaper boxed items (children's sand tables and inexpensive table and chair sets) into the "site-to-store" bins. To the casual observer, it looked as if stockers were just moving around merchandise. But once out of the view of the cameras, they removed the contents of the large boxes and discarded them in the claims area. They then removed the televisions from their boxes, put them into the large boxes that had contained the cheaper items, and re-sealed the boxes. They returned the large boxes to the sales floor, where they sat for an hour or so. A co-conspirator then purchased the boxes that appeared to contain cheaper items, but in fact contained the televisions. The conspirators managed to steal eight televisions valued at $228 per television.

(5)     The first cracks in the scheme began to appear when a manager discovered two empty television boxes in the "site-to-store" bins on May 15, 2014. The empty boxes prompted an investigation, and when no one could explain the empty boxes, a store investigator examined the surveillance footage. The video footage revealed that White and several others had moved televisions and cheaper merchandise in and out of the "site-to-store" bins, and then supposedly purchased

3

the cheaper merchandise. When the store took inventory, it discovered that eight thirty two inch Vizio televisions had disappeared.

(6) White was fired, and the police notified about the theft. The State indicted White for violation of 11 *Del. C.* § 841B, theft: organized crime retail. After a two-day trial during which the State played the surveillance footage, the jury returned a guilty verdict on the lesser included offense of theft of property worth more than $1,500.[1] The Superior Court sentenced White to two years at Level 5 suspended for eighteen months at Level 3. This appeal followed.

(7) White argues that there was insufficient evidence for a rational jury to convict him of theft. We review an insufficiency of evidence claim *de novo*, asking whether, considering all reasonable inferences in the State's favor, a rational jury could have found each element of the crime beyond a reasonable doubt.[2]

(8) White argues there was an insufficient nexus between the missing televisions and his "taking, exercising control, or obtaining" of them. He claims that the absence of video evidence showing him actually shuffling the contents of any boxes, or any direct evidence of his intent to deprive Walmart of the merchandise, means that the jury could not have found beyond a reasonable doubt that each element of the crime had been established.

---

[1] 11 *Del. C.* § 841(c)(1).
[2] *Monroe v. State*, 28 A.3d 418, 430 (Del. 2011).

4

(9)    The State had to provide sufficient evidence to prove, beyond a reasonable doubt, that White: (1) took, exercised control over, or obtained the televisions; and (2) had the intent to deprive Walmart of them or to appropriate them from the store.[3]  The State was not required to do this with direct evidence. Circumstantial evidence—provided it was sufficient to prove the elements of theft beyond a reasonable doubt—was sufficient.[4]

(10)    The State presented sufficient circumstantial evidence that a rational jury could have found White guilty.  Specifically, the State played video at trial of White and his accomplices moving boxes and purchasing merchandise in boxes in the Walmart, narrated by asset protection employee Michael Welfield.  White and the others could be seen moving Vizio televisions into the "site-to-store" bins, emptying large boxes and moving the empty boxes into the same area, after a few minutes returning the large boxes to the sales floor, and finally purchasing the large boxes.  White and the others had no reason to move merchandise into the "site-to-store" bins, and eight Vizio televisions were missing.  White and the others also were communicating throughout the video shown to the jury, and appeared to be coordinating the theft.

_____

[3] 11 *Del. C.* § 841(a).
[4] *Monroe*, 28 A.3d at 430 ("For purposes of [a sufficiency of the evidence] inquiry, this Court does not distinguish between direct and circumstantial evidence of a defendant's guilt."); *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

(11) The "nexus" that White contends was absent from the State's case existed where White can be seen on the surveillance footage acting as an obvious and active participant in the scheme to steal televisions. Further, there was no requirement that the State produce video evidence of White actually shuffling televisions between boxes in order to convict him.[5] Given the compelling circumstantial evidence put on at trial, the jury could have rationally concluded, beyond a reasonable doubt, that White took and intended to deprive Walmart of the televisions.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[5]*See Vincent v. State*, 996 A.2d 777, 779-80 (Del. 2010) (finding sufficient circumstantial evidence for criminal mischief conviction where defendant was the only person near the damaged vehicle and a witness heard a "thump," though no one actually saw the defendant inflict damage on the car).